**UNITED STATES v. WORLEY.**

No. 8558.

Circuit Court of Appeals, Eighth Circuit.

May 19, 1930.

F. H. Wagener, Regional Atty., United States Veterans' Bureau, and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb. (James C. Kinsler, U. S. Atty., and George A. Keyser and Edson Smith, Asst. U. S. Attys., all of Omaha, Neb., and Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Charles Battelle and Clarence T. Spier, both of Omaha, Neb., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

Emmett A. Puckett enlisted in the army of the United States April 2, 1917, and served as a private in the 139th Infantry until March 18, 1918, at which time he was discharged because of physical disability. It is stated that this disability was caused by an accident. While in the service, a team of mules ran away with him, and he sustained a serious injury to his back, which deprived him of any practical use of his lower limbs, and ultimately resulted in his death January 7, 1927. While in the army, Puckett applied for and obtained term insurance under the War Risk Insurance Act in the sum of $10,000. This insurance contract was in the usual war risk form. It is conceded that no certificate, much less policy, was ever issued to the assured. Receipts were given for payments taken out of the enlisted man's pay; the insurance granted being governed and controlled purely by statutes applicable thereto. The effect of this contract was that, in the event of death or total and permanent disability while the contract was in force, payments of $57.50 monthly would be made, to the beneficiary in case of death, and to the assured in case of total and permanent disability during the period of such disability. Act Oct. 6, 1917, 40 Stat. 398, 409. This insurance contract was in force at the date of his discharge; the premiums having been paid to April 1, 1918. Thereafter no premiums were paid. About January 7, 1924, Puckett filed with the Veterans' Bureau a claim for total permanent disability from the date of his discharge. This claim was rejected December 29, 1926.

April 23, 1927, the mother of the deceased soldier brought suit, as administratrix, to recover for his estate the unpaid monthly payments, under the terms of his insurance contract, from April 1, 1918, to February 1, 1927, aggregating $6,095.00. June 22, 1927, counsel for the government moved the court to require the mother to be joined as a party and to assert in her individual capacity any claim she might have as beneficiary. This motion was granted, and, in compliance with the court's order, the mother intervened July 5, 1927, praying judgment in the sum of $3,905, the aggregate of the installments maturing and to mature after the death of the assured. October 31, 1928, the jury found for the plaintiff and the intervener in the full amounts claimed. December 28, 1928, the District Court, upon motions of plaintiff and intervener, entered a supplemental judgment, in which it found that the plaintiff as administratrix was entitled to have and recover interest at the rate of 7 per cent. per annum upon the insurance installments from the date they were due, that the first monthly installment was due April 1, 1918, and that the amount of this interest which the plaintiff should recover up to

October 31, 1928 was the sum of $2,655.99, making a total judgment in favor of the plaintiff of $8,750.99, the same to bear interest at the rate of 7 per cent. per annum from October 31, 1928. It next found that the intervener was entitled to recover interest in like manner upon deferred payments due her from the date the same matured until paid, that the first installment was due her February 1, 1927, and that the amount of interest so due intervener upon such installments to October 31, 1928, was the sum of $84.36. The court further found as follows respecting the claim of the interveners:

"That the intervener recovered a judgment as beneficiary under said insurance policy in the sum of Three Thousand Nine Hundred Five ($3,905.00) Dollars and that of this amount there was, on October 31, 1928, the date of the rendition of the judgment herein, past due and owing to the intervener, installments the sum of $1,265.00, and that she is entitled to interest upon this amount at seven per cent. per annum until paid, and that the balance of said Three Thousand Nine Hundred Five ($3,905.00) Dollars to-wit: .$2,640.00 should be paid to the intervener at the rate of $57.50 per month commencing November 1, 1928, with interest at the rate of seven per cent. upon each of said installments as long as the same remains past due and unpaid."

The court then allowed the attorneys for plaintiff and intervener a fee of $1,274.03, to be paid as payments were made to plaintiff and intervener, and concluded its supplemental judgment as follows:

"That the intervener have and recover in addition to the judgment heretofore rendered on the 31st day of October, 1928, in the above entitled cause, the sum of $84.36 and that out of the total amount due the intervener she is entitled to have and recover payment at this time of $1,349.36 with interest at seven per cent. per annum from October 31, 1928 and the balance of said judgment shall be paid in installments at the rate of $57.50 per month, the first payment to be made on the first day of November, 1928 and that said deferred payments shall bear interest at the rate of seven per cent. per annum from the date the same became due subsequent to October 31, 1928, and that the plaintiff and intervener have and recover their costs, for all of which execution is hereby awarded, to all of which findings and rulings and judgment the defendant excepts."

The specifications of error relied upon by appellant are thus stated:

"1. The court erred in refusing defendant's motion for a directed verdict.

"2. The court erred in refusing the defendant's offer in evidence of the United States War Veterans' ratings of the assured.

"3. The court erred in rendering the supplementary judgment of date December 28, 1928, and then awarding to the appellees the following:

"a. Judgment for the amounts of insurance installments maturing after the action was instituted.

"b. Costs.

"c. Interest on the installments awarded to the appellees."

1. The first specification involves the claim that the plaintiff introduced insufficient evidence to show total and permanent disability at the time the insurance contract lapsed, and invokes the rule that an "appellate court will give consideration to the evidence given in a jury trial, and will reverse a judgment based thereon if clearly wrong." This rule is applicable, generally, only to exceptional cases, involving a clear miscarriage of justice. Where there is a conflict of evidence, where the issue is debatable, and there is substantial evidence to support a verdict, an appellate court should rarely, if ever, invade the province of the jury. The question at issue was whether the evidence showed total and permanent disability at the time the insurance contract lapsed for nonpayment of premiums. The War Risk Bureau has defined total disability as follows: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously and substantially gainful occupation shall be deemed in Articles III and IV to be total disability." And it is to be deemed permanent "when founded on conditions rendering it reasonably certain throughout life of the person suffering from it." Starnes v. United States (D. C.) 13 F.(2d) 212.

The Court of Appeals for the Ninth Circuit holds that the words "total" and "permanent" as applied to disability and as defined by the War Risk Bureau do not necessarily imply incapacity to do any work at all. Speaking of the case before it, that court says:

"The evidence of the plaintiff's ailments and illnesses, contracted while in the service and continuing thereafter, was in itself sufficient to sustain the verdict, for it tended to

show that the plaintiff had no substantial earning capacity; that the work which he did was intermittent and was continued only for brief periods, and invariably resulted in relapses which totally unfitted him for work. The insurance contract should be liberally construed. Jagodnigg v. United States (D. C.) 295 F. 916; Starnes v. United States (D. C.) 13 F.(2d) 212." United States v. Eliasson (C. C. A.) 20 F.(2d) 821, 823.

The following federal cases are to the same effect: United States v. McPhee (C. C. A. 9) 31 F.(2d) 243; United States v. Cox (C. C. A. 5) 24 F.(2d) 944; Wood v. United States (D. C.) 28 F.(2d) 771; Magruder, et al. v. United States (D. C.) 32 F. (2d) 807.

■ In the instant case the assured, after his discharge, made a praiseworthy effort to do some substantially gainful work. His ability before his injury was limited to manual labor, and for this, after his discharge, he was almost entirely incapacitated. His legs were partially paralyzed and practically useless for any sustained effort. The work which he undertook to do, given to him by an old employer, largely out of indulgent sympathy, did not require walking to any extent. He found it impossible to continue even at this. He was repeatedly sent to hospitals at the instance of the Veterans' Bureau, and finally to the government hospital at Leavenworth, Kan., where he died. Giving every consideration to conflicts of testimony, and to that deemed by counsel for appellant to be of especial evidentiary value, we feel, not only that the verdict is amply sustained, but that the inability of the soldier, from the date of his discharge, to follow continuously any substantially gainful occupation was convincingly established.

■ 2. This specification dwells upon the refusal to admit in evidence the report of the War Veterans' Bureau containing the medical examination by the regular board to which the matter was assigned, the rating made, and the decisions of the different boards of the Veterans' Bureau in the premises. This was offered in evidence as government's Exhibit No. 4. We are compelled to get our knowledge of the contents of this exhibit from the very general remarks of government counsel when making the offer, for the exhibit was not called for in the præcipe and is not found in the transcript. We cannot, therefore, well pass upon its competency, nor whether it falls within the category of admissible records recognized in McGovern v. United States (D. C.) 294 F. 108, and Evans-

ton v. Gunn, 99 U. S. 660, 25 L. Ed. 306. However, the action of the Bureau upon the claim of the assured for a rating of permanent disability from the date of his discharge, and the basis for that action, substantially appeared from the testimony of Dr. Elwood, one of the medical staff of the Veterans' Bureau which examined Puckett, and from other facts before the jury. Dr. Elwood was present at the trial, used his report for the purpose of testifying, and read the substance of it to the jury. We do not think the failure to admit this exhibit, even if admissible, operated appreciably to the disadvantage of appellant. The record therefore discloses sufficient ground for a recovery by both plaintiff and intervener. In behalf of the former, the jury found the aggregate of the installments of insurance that had matured at the time of Puckett's death without interest. For intervener, the beneficiary, the verdict covered all installments remaining under the insurance contract, including those maturing, and to mature, after the petition for intervention was filed. By its supplemental order the trial court entered judgment for the amounts of insurance maturing after the action was instituted, awarded interest on all installments from the date of their maturity to October 31, 1928, the date judgment was entered upon the verdict of the jury, allowed an attorney's fee based upon both principal and interest thus adjudged, and taxed costs against the government to be recovered on execution. This action of the court is assigned as error. After the hearing before us, this court, being in doubt because of the apparently divergent views expressed in the following decisions: Birmingham v. United States (C. C. A.) 4 F.(2d) 508, 509; United States v. Lyke (C. C. A.) 19 F.(2d) 876; Jackson v. United States (D. C.) 24 F.(2d) 981; Gianakouras v. United States (D. C.) 33 F.(2d) 936; United States v. Jackson (C. C. A.) 34 F.(2d) 241—and because of conflict of opinion with respect to the proper interpretation of Standard Oil Co. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519, in view of the holdings in White v. United States, 270 U. S. 175, 180, 46 S. Ct. 274, 70 L. Ed. 530; Seaboard Air Line R. Co. v. United States, 261 U. S. 299, 43 S. Ct. 354, 67 L. Ed. 664; and Boston Sand & Gravel Co. v. United States, 278 U. S. 41, 47, 49 S. Ct. 52, 73 L. Ed. 170, addressed the following questions to the Supreme Court:

"1. Upon the facts stated (in the certificate), does the United States, as matter of law, stand in the position of one who has

gone into the business of insurance, and must therefore be assumed to have accepted the ordinary incidents of suits in such business?

* * *

"2. May judgment be entered against the United States for the amounts of insurance installments maturing after the action was instituted? * * *

"3. Is interest allowable against the United States upon the monthly installments from the date they are found to be due? * * *

"4. May costs be awarded generally against the United States, upon condition that they be paid from accumulated funds in the hands of the Veterans' Bureau, if any, available for that purpose?"

Monday, April 14, 1930, that court (281 U. S. 339, 50 S. Ct. 291, 292, 74 L. Ed. 887) under this same title, No. 548, rendered its decision upon the requests made. The first of the above questions was left unanswered as one of objectionable generality. United States v. Mayer, 235 U. S. 55, 66, 35 S. Ct. 16, 59 L. Ed. 129. It is felt, however, that the proper application of the decision in Standard Oil Co. v. United States, supra, is sufficiently determined in the body of this latest opinion of the Supreme Court. The three remaining questions were answered in the negative. With respect to the second question, concerning the right to enter judgment for the amounts of insurance installments maturing after an action is instituted, Mr. Justice Butler said:

"Undoubtedly, when one's right to recover is established by judgment, the Veterans' Bureau will pay him installments maturing in his favor after the commencement of the action. It therefore is a matter of no practical importance whether the installments maturing between date of intervention and entry of the judgment be included. But the certificate does not disclose any supplemental petition in respect of such installments, and the judgment should not include them. Hamlin, Hale & Co. v. Race, 78 Ill. 422; Carter-Crume Co. v. Peurrung (C. C. A.) 99 F. 888, 890.

"Section 514, tit. 38, U. S. C. (38 USCA § 514), provides that, if the designated beneficiary does not survive the insured or dies prior to receiving all of the 240 installments, or all such as are payable and applicable, the present value of the monthly installments thereafter payable shall be paid to the estate of the insured. A judgment for the designated beneficiary for all installments thereafter to mature would not protect the United States against a claim by the estate of the insured for any installments falling due after the death of the beneficiary. The judgment should not govern payment of installments later to mature."

In its consideration of the third question, the court enters upon an analysis, among others, of Seaboard Air Line R. Co. v. United States, 261 U. S. 299, 304, 43 S. Ct. 354, 67 L. Ed. 664, and of Standard Oil Co. v. United States, 267 U. S. 76, 79, 45 S. Ct. 211, 212, 69 L. Ed. 519. In the latter case, one of marine insurance under the War Risk Insurance Act, it was held that:

"When the United States went into the insurance business, issued policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business. The policies promised that claims would be paid within 30 days after complete proofs of interest and loss. * * *"

The distinction between property insurance and that granted to those employed in active service under the War and Navy Departments is pointed out by the Supreme Court in its answer to question No. 3; the latter being held to include both insurance and pension, as stated in White v. United States, 270 U. S. 175, 180, 46 S. Ct. 274, 70 L. Ed. 530. The opinion, in its answer to this question, concludes thus:

"The act does not provide for the payment of any interest on past-due installments. It has been uniformly construed by the Bureau not to allow any. There is nothing in the conduct of the United States in respect of life and disability insurance from which an agreement on its part to pay interest may reasonably be implied.

"This question is not within the principle upon which interest was allowed in Standard Oil Co. v. United States, supra. It should be answered in the negative."

Answering the fourth question, the court said:

"The rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses. United States v. Chemical Foundation, 272 U. S. 1, 20, 47 S. Ct. 1, 71 L. Ed. 131. There is no statute permitting costs to be awarded against the government in this case."

■ The verdict of the jury established the right to recover on the part of both plaintiff and intervener. In the case of the latter, that

recovery should have been confined to the installments which had matured when the petition of intervention was filed, July 5, 1927. Such installments are those maturing on the 1st days of February, March, April, May, June, and July, 1927, six in number, aggregating $345. The judgment in favor of intervener should not exceed this sum. Upon certificate to that effect, when intervener's right to recover has been established by judgment, the Veterans' Bureau, as the Supreme Court says, will undoubtedly pay her the installments maturing in her favor after the commencement of the action.

In its supplemental order the court erred in rendering judgment for such installments maturing after the petition of intervention was filed, in allowing interest against the United States upon the monthly installments from the date they were found to be due, in allowing an attorney's fee based upon both principal and such interest, and in awarding costs against the United States. The attorney's fee allowable shall not "exceed 10 per centum of the amount recovered and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid." 38 USCA § 551.

The case is remanded to the court below, with directions to modify and correct the judgment by eliminating therefrom all installments adjudged in favor of intervener in excess of $345, and all interest and costs allowed and awarded against the United States. The attorney's fee likewise should be reduced to conform to the statute above set out.

The judgment in favor of plaintiff and intervener, when so modified and corrected in accordance with the views herein expressed, will stand affirmed.